UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AARON MIKE THOMAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SERGEANT CORDARO D. )<br>MELTON, *et al.*, )<br>)<br>Defendants. ) | Case No. 2:19-cv-966-LCB-GMB |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff, Aaron Mike Thomas, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights. Doc. 1. Thomas names Sergeant Cordaro D. Melton and the Department of Corrections ("ADOC") as defendants, and he seeks monetary relief. Doc. 1 at 6. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991). For the following reasons, the Magistrate Judge recommends the dismissal with prejudice of Thomas' claims against Melton and the ADOC.

## **I. PROCEDURAL HISTORY**

On October 16, 2019, the Magistrate Judge entered an Order for Special Report directing the Clerk to forward a copy of the complaint to Melton and directing him to file a Special Report addressing the plaintiff's factual allegations. Doc. 11.

The Magistrate Judge advised Melton that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it to be a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. Doc. 11.

On April 26, 2020, Melton filed a Special Report, supplemented by an affidavit and other evidence. Doc. 23. On May 11, 2020, the Magistrate Judge notified the parties that the court would construe the Special Report as a motion for summary judgment and notified the plaintiff that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. Doc. 24. The Magistrate Judge also advised the plaintiff of the consequences of any default or failure to comply with Federal Rule Civil Procedure 56. Doc. 24; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On May 18, 2020, the plaintiff filed a response. Doc. 25. The motion is now ripe for review.

## II. STANDARD OF REVIEW

Because the court has construed the defendant's Special Report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in the light most favorable to the non-moving party and must draw all

reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990). As the Eleventh Circuit has explained,

> [f]acts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*,

3

the court must construe the complaint more liberally than if the pleadings had been drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015) (holding that a *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney").

### III. STATEMENT OF FACTS[1]

On June 6, 2019, at approximately 8:10 p.m., Correctional Officer Malcolm Holtzclaw responded to the V & W Unit of Donaldson Correctional Facility after Officer Sharana Carter called for assistance. Doc. 23-1 at 1. As Officer Holtzclaw entered the W Unit, he observed a blazing fire in cell W-16, which was assigned to the plaintiff. Doc. 23-1 at 1.

Sergeant Cordaro Melton also responded to the call. Doc. 23-1 at 1. Sergeant Melton and Officer Holtzclaw approached the plaintiff's cell and heard the plaintiff screaming that he could not breathe. Doc. 23-2. Melton instructed Officer Carter to open the plaintiff's cell door. Doc. 23-2. As Melton and Holtzclaw entered the cell, the plaintiff ran towards his bunk and grabbed an inmate-made knife and screamed, "'I told ya'll motherf*****s I can't breathe!'" Doc. 23-2. The plaintiff began swinging the knife at Melton and Holtzclaw and stabbed Melton in the left forearm.

---

[1] Consistent with the summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff. Factual disputes are addressed in footnote form.

Doc. 23-2. Melton and Holtzclaw tackled the plaintiff onto the floor.[2] Doc. 23-2. Melton drew his baton and struck the plaintiff several times while giving him loud verbal commands to drop the knife. Doc. 23-2. Melton eventually was able to grab the knife from the plaintiff's right hand.[3] Doc. 23-2. Holtzclaw secured the plaintiff in handcuffs and all force ceased. Doc. 23-2. At some point, Officer Quinton Jackson entered the cell and extinguished the fire. Doc. 23-1 at 1. Melton and Holtzclaw completed a body chart and a First Report of Injury form, then left the facility for further medical evaluation. Doc. 23-1 at 1.

Prison nursing staff completed a body chart of the plaintiff, which indicated that the plaintiff's left arm was swollen from the shoulder down. Doc. 23-1 at 17. The plaintiff also sustained two puncture wounds to the back of his head, and the left side of his face was swollen. Doc. 23-1 at 17. Upon further examination, Nurse Practitioner Romano noted that the plaintiff sustained a 1-inch and a 3-inch laceration to his posterior scalp. Doc. 23-3 at 40. Romano noted that the plaintiff's left upper arm and elbow were swollen and painful to palpation. Doc. 23-3 at 40. The plaintiff's left hand and wrist also were swollen, and he could move his thumb but not his fingers. Doc. 23-3 at 40. Romano noted that the plaintiff likely had a

---

[2] The incident report notes that during the fall to the floor the plaintiff twisted his body "in an attempt to continue stabbing Sergeant Melton and struck his head on the corner of his bed." Doc. 23-1 at 1.

[3] The incident report reflects that after Melton struck the plaintiff on the arm several times with his baton, the plaintiff complied with commands to drop the knife. Doc. 23-1 at 1.

displaced fracture of his left forearm. Doc. 23-3 at 40. Romano sutured the lacerations on the plaintiff's head. Doc. 23-3 at 40.

The plaintiff went to Brookwood Hospital for additional treatment of his arm. Doc. 23-1 at 2. The plaintiff was diagnosed with a left ulnar fracture and a suspected nondisplaced fracture through his index finger metacarpal. Doc. 23-3 at 79–81. No other fractures were noted. Doc. 23-3 at 79–81.[4]

On June 17, 2019, Lieutenant Deaundra Johnson completed a Use of Force Investigative Report concerning the June 6, 2019 incident. Doc. 23-1 at 4. Johnson found that Melton and Holtzclaw "used a legitimate amount of force to keep inmate Thomas from his vicious assault on the mentioned security personnel," and that this use of force was justified by the circumstances. Doc. 23-1 at 4.

## IV. ANALYSIS

### A. Alabama Department of Corrections

The plaintiff names ADOC as a defendant in his complaint. Doc. 1 at 1. However, ADOC is a state agency immune from suit under the Eleventh Amendment. *See Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir. 1988) ("[T]he Supreme Court has held that a suit directly against the Alabama Department of

---

[4] The plaintiff contends that the back of his head was "busted in 35 different spots," and that he suffered a fractured left wrist and "bruised bones" in his right hand. Doc. 1 at 6. Pictures of the back of the plaintiff's head and the medical records do not reflect these additional injuries. Doc. 23-1 at 15–16; Doc. 23-3; Doc. 23-4.

Corrections is barred by the eleventh amendment.") (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). Accordingly, the plaintiff's claim against the ADOC is due to be dismissed.

**B.  Melton**

The plaintiff brings his excessive force claim against Melton in both his official and individual capacities. These claims are due to be dismissed.

*1.  Official Capacity*

Defendant Melton's motion for summary judgment is due to be granted on the plaintiff's Eighth Amendment excessive force claim against him in his official capacity for monetary damages. Doc. 1 at 2. It is well established that the Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Likewise, Eleventh Amendment immunity bars claims for monetary damages brought against officials and employees of state entities sued in their official capacities. *Id*. at 101–02. Accordingly, Melton's motion for summary judgment is due to be granted on the plaintiff's excessive force claim against him in his official capacity for monetary damages.

*2.  Individual Capacity*

Defendant Melton's motion for summary judgment also is due to be granted as to the plaintiff's Eighth Amendment excessive force claim asserted against him

in his individual capacity for monetary damages. The plaintiff's excessive force allegations must be analyzed consistent with the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999). In *Hudson*, 503 U.S. at 6–7, the Supreme Court held that when assessing an inmate's excessive force claim "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned that

> [m]any of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors to guide in an evaluation of the excessiveness of the force used in any certain instance. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived

8

by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Whitley*, 475 U.S. at 321.

> In applying these factors to a particular case, the Supreme Court observed:
>
> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9–10 (citations omitted).

To create a genuine issue of material fact, a plaintiff must come forward with evidence from which a reasonable inference can be drawn that a defendant acted maliciously and sadistically. Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Applying these principles to the facts at issue, the Magistrate Judge makes the following findings. On June 6, 2019, Melton and Officer Holtzclaw responded to a call and noticed a fire in the plaintiff's cell. Doc. 23-1 at 1. When Melton and Officer Holtzclaw entered the cell, it is undisputed that the plaintiff grabbed a knife and began swinging the knife at the officers while yelling expletives. Doc. 23-1 at 1; Doc. 23-2. It also is undisputed that the plaintiff stabbed Melton in the forearm with the knife. Doc. 23-1 at 1; Doc. 23-2. Plaintiff's actions permitted Melton to use

9

some level of force to restrain him, prevent him from further injuring the officers or himself, and to accomplish security interests more generally.

The officers did respond with force. Specifically, Melton and Holtzclaw tackled the plaintiff, taking him to the floor, and Melton delivered several blows to the plaintiff's arm with his baton while giving loud verbal commands to drop the knife. Doc. 23-1 at 1; Doc. 23-2. In light of the tense security situation presented to the officers—including the ongoing fire in the cell and the plaintiff's armed attack of them—there is no evidentiary support for a conclusion that the amount of force used by Melton to gain control over the plaintiff exceeded that which the situation made necessary. Nor is there is evidence that Melton maliciously and sadistically attacked the plaintiff or used force "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9–10 (citations omitted). Rather, the plaintiff's own violence warranted a swift response from Melton to prevent further injury and resistance.

Although assessing the credibility of the allegations made by the plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment, *see, e.g., Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986), to create a genuine issue of material fact, the plaintiff must come forward with evidence from which a reasonable inference can be drawn that Melton acted maliciously and sadistically. In this context, the court must not second guess a prison official's use of force in response to a violent disturbance and resistance by prisoners unless that

force is so excessive as to be unmistakably malicious and sadistic. *Hudson*, 503 U.S. at 6–7; *Wilson v. Blankenship*, 163 F.3d at 1295. This is because the use of force by prison officials to compel compliance with security and safety needs in the prison system is, unfortunately, a common occurrence. Uses of force to maintain order and discipline are not unconstitutional unless they are so great or so unnecessary as to be malicious and sadistic. Where the evidence leads to the inference that the force was applied for the legitimate purpose of restoring or maintaining order, there is no genuine dispute of fact precluding summary judgment.

Here, the evidence supports the conclusion that Melton acted with the legitimate intent to restore or maintain order. The undisputed evidence that the plaintiff's cell was on fire and that he stabbed Melton authorized Melton to use force. *See generally Graham v. Connor*, 490 U.S. 386, 396–97 (1989). This court will not second guess that force unless the facts support a conclusion of malicious and sadistic intent. Sufficient facts simply do not exist here.

The plaintiff did sustain two lacerations to the back of his head, a broken arm, and a broken finger as a result of Melton's use of force. Doc. 23-3 at 40 & 79–81. The plaintiff does not dispute that he sustained lacerations to his head when Melton and Holtzclaw tackled him and he continued to twist on the floor, hitting his head on his bedframe. Doc. 23-1 at 1. In addition, given the undisputed facts that Melton struck the plaintiff several times with his baton to force the plaintiff to drop the knife,

11

a broken arm and a broken finger are consistent with the range of expected injuries.

Regardless, the extent of injury suffered is only one factor to be considered in evaluating a use of force. *See Hudson*, 503 U.S. at 7. The Supreme Court in *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 7), clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Even though the plaintiff suffered reasonably serious injuries, his allegations, if proven at trial, still fail to establish that Melton's use of force was malicious and sadistic. There was a need for the application of force, and the force used was not an unreasonable reaction to the plaintiff's undisputed violence against the officers.

The plaintiff, for the first time, alleges in his response to summary judgment that other officers "aggressively grabbed Sgt. Melton after he continued to apply force when it was no longer necessary." Doc. 25 at 1.[5] This is the only alleged fact in the record that could conceivably support the inference that Melton's use of force toward the plaintiff was excessive. But the plaintiff did not make this allegation in his complaint, and a response to a motion for summary judgment is not the proper

---

[5] In his response to summary judgment, the plaintiff claims that he alleged in his complaint that Sergeant Mitchell and Officer Holtzclaw had to prevent Melton from continuing to use force against him after it was no longer necessary. Doc. 25 at 1. The plaintiff made no such allegations in his complaint. *See generally* Doc. 1.

12

method by which to amend a complaint. *See Flintock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227–28 (11th Cir. 2013). Additionally, the plaintiff's response is not sworn and the court cannot consider it as an unsworn written declaration, made under penalty of perjury, as required by 28 U.S.C. § 1746. *See also Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that district courts generally may not consider unsworn statements when "determining the propriety of summary judgment"). For these reasons, the plaintiff's response cannot create a factual dispute for summary judgment purposes. Melton's motion for summary judgment is due to be granted.

## V. RECOMMENDATION

For these reasons, the Magistrate Judge RECOMMENDS that the plaintiff's claims against the ADOC be DISMISSED WITH PREJUDICE. The Magistrate Judge further RECOMMENDS that Melton's motion for summary judgment be GRANTED and the plaintiff's Eighth Amendment excessive force claim be DISMISSED WITH PREJUDICE.

## VI. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to

which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation

directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on January 20, 2021.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE